DEC 30 2025 AM9:33
FILED - USDC - FLMD - ORL

# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF FLORIDA

# ORLANDO DIVISION

**SOMMER SHERWOOD,**

Plaintiff,

v.

**DIRECT FUNDING NOW LLC;**

**KENNETH MANESSE;**

**CHRISTIAN MURILLO;**

and

**JOHN DOE CALLERS 1–10,**

Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

1

Plaintiff, Sommer Sherwood, sues Defendants Direct Funding Now LLC, Kenneth Manesse, Christian Murillo, and John Doe Callers 1–10, and alleges as follows:

## I. INTRODUCTION

1. This is an action for damages and injunctive relief arising from Defendants' repeated and willful violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227(b) and §227(c), and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. §501.059.

2. Defendants orchestrated and benefitted from an unlawful telemarketing campaign that relied on predictive dialers, prerecorded messages, rotating caller IDs, and fictitious business names to place unsolicited sales calls to Plaintiff's cellular telephone without consent.

3. The calls were designed to generate financing leads that were funneled directly to Direct Funding Now LLC and its owners, who knowingly accepted and used the illegally obtained leads.

## II. JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction under 28 U.S.C. §1331 because this action arises under the TCPA.

5. This Court has supplemental jurisdiction over Plaintiff's FTSA claim pursuant to 28 U.S.C. §1367.

6. Venue is proper in this District because Plaintiff resides here, the unlawful calls were received here, and Defendants transact business in Florida.

## III. PARTIES

7. Plaintiff **Sommer Sherwood** is an individual residing at 1848 Morgans Mill Circle, Orlando, Florida 32825.

8. Defendant **Direct Funding Now LLC** is a California limited liability company engaged in the business of providing and brokering business financing nationwide, including in Florida.

9. Defendant **Kenneth Manesse** is an owner and principal of Direct Funding Now LLC and exercised control over the company's marketing and lead-generation practices.

10. Defendant **Christian Murillo** is a member and manager of Direct Funding Now LLC and exercised control over the company's business operations, including its acceptance and use of telemarketing leads.

11. Defendants **John Doe Callers 1–10** are unknown individuals and entities that placed telemarketing calls using predictive dialers and prerecorded messages while operating under fictitious business names including Funding Center, The Funding Center, Business Funding Center, Funding-Center.com, and TheFundingCtr.com.

12. Plaintiff will amend this Complaint to substitute the true identities of the Doe Defendants once discovered.

## IV. FACTUAL ALLEGATIONS

13. Plaintiff owns and uses cellular telephone number **336-901-5904**, which is a personal, residential wireless number.

14. Plaintiff's cellular number has been registered on the **National Do Not Call Registry** continuously during all relevant times.
*(See Exhibit B – DNC Registry Confirmation).*

4

15. Plaintiff has never provided prior express written consent, prior express consent, or any other authorization for Defendants to place telemarketing calls to her cellular telephone.

16. Between **September 11, 2023 and January 18, 2024**, Plaintiff received **repeated unsolicited telemarketing calls** promoting "business funding" and "business loans," despite Plaintiff repeatedly stating she did not own a business.

17. The calls were placed using **predictive dialers and/or prerecorded voice messages**, evidenced by dead air, delayed agent connection, scripted messaging, and uniform sales pitches.
*(See Exhibit A – Call Log).*

18. The callers rotated phone numbers, spoofed caller IDs, and used generic identifiers such as "Scam Likely" or "Business Funding," demonstrating an intent to evade detection and enforcement.

19. During multiple calls, live agents identified themselves using fictitious or misleading business names including "Funding Center," "The Funding Center," "Business Funding Center," and "Funding-Center.com."

20. The callers' sole purpose was to solicit Plaintiff for financing products and to route her into an online application funnel.

21. On **January 18, 2024**, a caller identifying himself as "Jason" explicitly instructed Plaintiff to apply online at **Funding-Center.com** and **TheFundingCtr.com.**
*(See Exhibit A).*

22. Both websites list the identical address: **1489 West Warm Springs Rd., Suite 110, Henderson, Nevada 89014**, which is a known **virtual office location**, not an operating business headquarters.
*(See Exhibit D – Virtual Office Listing).*

23. To determine who was truly responsible for the calls, Plaintiff submitted a request for information through **Funding-Center.com** on **February 20, 2024.**

24. **Immediately after submitting the form**, Plaintiff received a phone call from **Jeffrey Anderson**, who identified himself as calling from **Direct Funding.**

25. Plaintiff was then sent **loan application and financing documents** by Direct Funding, confirming that Plaintiff's information was instantaneously

transferred from the telemarketing website to Direct Funding's internal sales process.

*(See Exhibit E – Loan Documents).*

26. At no time did Direct Funding disclaim the telemarketing activity, reject the lead, or state that the calls were unauthorized.

27. These facts establish that the telemarketing calls were part of a coordinated campaign designed to generate financing leads for Direct Funding Now LLC and its owners.

## Willful and Knowing Conduct

28. Defendants' violations were **willful and knowing** within the meaning of 47 U.S.C. §227(b)(3) and §227(c)(5).

29. Plaintiff expressly informed live callers on multiple occasions that she did not own a business and did not wish to receive further calls.

30. Despite this knowledge, Defendants continued placing telemarketing calls using predictive dialers and prerecorded messages.

*(See Exhibit A).*

31. Defendants' use of rotating phone numbers, fictitious business names, and a virtual office address demonstrates conscious disregard for the TCPA and FTSA.

32. Defendants further demonstrated willfulness by immediately accepting and acting upon Plaintiff's lead information after it was obtained through unlawful calls.
    *(See Exhibit E).*

33. Defendants' conduct supports the imposition of **treble statutory damages**.

## V. LOGICAL BRIDGE BETWEEN THE CALLS AND DIRECT FUNDING NOW LLC

34. Courts recognize a logical bridge where telemarketing calls funnel consumers into a defendant's sales or application pipeline. *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817 (N.D. Ill. 2016).

35. The Middle District of Florida routinely permits TCPA and FTSA claims to proceed past the pleading stage where plaintiffs allege unsolicited calls, registry status, and a clear link between callers and the beneficiary of the calls. *See Taylor v. Suntuity Solar Ltd.*, No. 8:23-cv-00694-MSS-AEP (M.D.

8

Fla.); *Clouse v. loanDepot, LLC*, No. 8:23-cv-2720-CEH-SPF (M.D. Fla. Jan. 6, 2025).

36. Here, every telemarketing call directed Plaintiff to the same intake mechanism—Funding-Center.com and TheFundingCtr.com—regardless of which fictitious name the caller used.

37. Submission of information through those websites resulted in immediate contact from Direct Funding and the transmission of loan documents.

38. This conduct mirrors the lead-generator relationship found sufficient to impose liability in *Krakauer v. Dish Network, LLC*, 925 F.3d 643 (4th Cir. 2019).

39. The websites had no independent lending function and existed solely to route leads to Direct Funding.

40. The telemarketing calls, websites, and follow-up communications operated as a **single integrated lead-generation enterprise.**

41. These facts establish a clear and continuous logical bridge connecting the illegal calls to Direct Funding Now LLC and its owners.

## VI. VICARIOUS LIABILITY AND INDIVIDUAL LIABILITY

42. Under federal agency principles, a company is vicariously liable for unlawful telemarketing conducted by its agents or lead generators. *In re Joint Petition Filed by Dish Network*, 28 FCC Rcd. 6574 (2013).

43. A company ratifies unlawful calls by knowingly accepting the benefits of those calls. *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068 (9th Cir. 2019).

44. The Middle District of Florida has rejected early dismissal of TCPA claims where defendants are alleged to have benefitted from or failed to police telemarketing conducted on their behalf. *See Cacho v. USHealth Advisors, LLC*, 2024 WL 3738869 (M.D. Fla. July 24, 2024).

45. Direct Funding Now LLC knowingly accepted and used Plaintiff's lead information generated by unlawful telemarketing.

46. Defendants Manesse and Murillo exercised control over Direct Funding's marketing and lead-generation practices and knowingly benefitted from the illegal calls.

47. Individuals who control telemarketing operations may be held personally liable under the TCPA. *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001).

48. Defendants are jointly and severally liable for all violations.

**Failure to Maintain Internal Do Not Call Procedures**

49. Defendants failed to maintain written DNC policies, training programs, or internal DNC lists as required by 47 C.F.R. §64.1200(d).

50. Defendants continued calling Plaintiff despite her number being registered on the National Do Not Call Registry and despite verbal stop requests.

51. This failure constitutes an independent violation of the TCPA and supports enhanced statutory damages.

**Personal Participation and Control by Individual Defendants**

52. Defendants **Kenneth Manesse** and **Christian Murillo** were not passive owners, but active participants in and controlling forces behind Direct Funding Now LLC's marketing and lead-generation operations.

53. Manesse and Murillo had authority to hire, retain, supervise, and terminate third-party telemarketers and lead generators used to solicit consumers on Direct Funding's behalf.

54. Manesse and Murillo approved or knowingly permitted the use of third-party telemarketing vendors, intake websites used to receive telemarketing leads, and sales personnel who immediately contacted consumers after leads were generated.

55. Manesse and Murillo had actual knowledge that Direct Funding was receiving leads generated through unsolicited robocalls, including calls made using predictive dialers and prerecorded messages.

56. Despite this knowledge, Manesse and Murillo authorized the continued acceptance and use of those leads, including Plaintiff's lead, and personally benefitted from the resulting financing transactions.

57. Manesse and Murillo had the power to stop the telemarketing campaign, reject unlawfully generated leads, or require TCPA and FTSA compliance, yet failed to do so.

58. By knowingly accepting the benefits of the unlawful calls and failing to prevent further violations, Manesse and Murillo ratified the telemarketing misconduct and are personally liable for each violation.

59. The individual Defendants' liability is direct, vicarious, and joint and several.

## VII. COUNT I – TCPA §227(b)

*(Unlawful Autodialed and Prerecorded Calls)*

60. Defendants placed autodialed and prerecorded telemarketing calls to Plaintiff's cellular telephone without consent.

61. Defendants violated 47 U.S.C. §227(b)(1)(A)(iii).

## VIII. COUNT II – TCPA §227(c)

*(National Do Not Call Registry)*

62. Defendants made multiple telemarketing calls to a number registered on the National Do Not Call Registry.

13

63. Defendants lacked lawful DNC procedures.

## IX. COUNT III – FLORIDA TELEPHONE SOLICITATION ACT (FTSA)

## Fla. Stat. §501.059

64. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

65. Defendants made telephonic sales calls to Plaintiff's cellular telephone using an automated system for the selection or dialing of telephone numbers, including predictive dialers.

66. Defendants placed such calls without Plaintiff's prior express written consent, in violation of Fla. Stat. §501.059(8)(a).

67. Defendants placed telephonic sales calls despite Plaintiff's number being registered on the National Do Not Call Registry and despite Plaintiff's verbal requests that the calls stop.

68. Defendants failed to maintain or implement written policies, training programs, or internal do-not-call procedures as required by Florida law.

69. Defendants' FTSA violations were willful and knowing.

14

70. Plaintiff is entitled to statutory damages of $500 per violation, or $1,500 per violation for willful conduct.

71. Plaintiff seeks injunctive relief prohibiting further FTSA violations.

## X. DAMAGES

72. Defendants placed at least ten (10) unlawful telemarketing calls to Plaintiff's cellular telephone.
*(See Exhibit A).*

73. Each call constitutes a separate violation of 47 U.S.C. §227(b), 47 U.S.C. §227(c), and Fla. Stat. §501.059.

74. Because Defendants' conduct was willful and knowing, Plaintiff is entitled to treble statutory damages of $1,500 per call under each statute.

75. Plaintiff seeks statutory damages pled in the alternative as follows:

- TCPA §227(b): $15,000

- TCPA §227(c): $15,000

- FTSA §501.059: $15,000

**Total statutory damages sought: $45,000**

76.Plaintiff will elect the maximum recovery permitted by law at judgment and does not seek impermissible double recovery.

77.Plaintiff also seeks injunctive relief and costs.

## XI. JURY DEMAND

78.Plaintiff demands a trial by jury on all issues so triable.

## XII. EXHIBITS

- **Exhibit A** – Call Log

- **Exhibit B** – National Do Not Call Registry Confirmation

- **Exhibit C** – Screenshots of Funding-Center.com

- **Exhibit D** – Virtual Office Listing

- **Exhibit E** – Loan Documents from Direct Funding

## XIII. LEAVE TO AMEND

79. Plaintiff respectfully requests leave to amend this Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) should discovery reveal additional facts, additional defendants, additional telephone numbers, additional calling campaigns, or additional violations of the TCPA, FTSA, or related laws.

80. Plaintiff specifically seeks leave to amend to substitute the true names of Defendants John Does 1–10 and to conform the pleadings to the evidence as it develops.

81. Granting leave to amend will not prejudice Defendants and will promote resolution of this action on the merits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff **Sommer Sherwood** respectfully requests that this Court enter judgment in her favor and against **Defendants Direct Funding Now LLC, Kenneth Manesse, Christian Murillo, and John Does 1–10**, jointly and severally, and award the following relief:

A. Statutory damages in the amount of **Forty-Five Thousand Dollars ($45,000)**

for Defendants' willful and knowing violations of the TCPA and FTSA;

B. Declaratory relief that Defendants violated 47 U.S.C. §227(b), 47 U.S.C.

§227(c), and Fla. Stat. §501.059;

C. Injunctive relief prohibiting Defendants from engaging in further unlawful

telemarketing practices;

D. An order requiring Defendants to implement lawful telemarketing compliance

procedures;

E. Costs of this action; and

F. Such other relief as the Court deems just and proper.

**Respectfully submitted,**

*Sommer Sherwood*

**Sommer Sherwood**

1848 Morgans Mill Circle

Orlando, Florida 32825

Phone: 336-901-5904

Email: sherwoodsommer1@gmail.com