UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SOMMER SHERWOOD,

Plaintiff,

v. Case No. 6:25-cv-2506-PGB-CAB

DIRECT FUNDING LLC;
KENNETH MANESSE;
CHRISTIAN MURILLO; and JOHN
DOE CALLER 1-10,

Defendants.

---

## REPORT AND RECOMMENDATION

This cause comes before the Court on the Motion to Dismiss of Defendant Direct Funding Now, LLC ("DFN"), filed on June 30, 2026. (Doc. 21) (the "Motion"). On July 10, 2026, Plaintiff Sommer Sherwood additionally filed a Response in Opposition to Defendant DFN's Motion to Dismiss. (Doc. 24) ("Plaintiff's Response"). Upon consideration, the undersigned respectfully recommends that the Court grant Defendant's Motion in part and deny it in part.

### I. Background

Plaintiff, proceeding *pro se*, instigated the present action by filing a Complaint on December 30, 2025, against Defendants DFN, Kenneth Manesse, Christian

Murillo, and "John Doe Callers 1-10." (Doc. 1) (the "Complaint").[1] Plaintiff alleges that, despite her cellular telephone number being registered on the National Do Not Call registry, between September 11, 2023, and January 18, 2024, Plaintiff "received repeated unsolicited telemarking calls" whose proponents used "predictive dialers and/or prerecorded voice messages" promoting "'business funding' and 'business loans.'" Plaintiff's Complaint further asserts that, during these calls, "live agents identified themselves using fictitious or misleading business names" in order to "solicit Plaintiff for financing products and to route her into an online application funnel." (*Id.* at 5–6).

Plaintiff maintains that, after submitting a "request for information" through the website that one of these agents purportedly directed her to so that she could "determine who was truly responsible for the calls," she then received a phone call from a person affiliated with DFN, who proceeded to send her a loan application and other financing documents unsolicited. (*Id.* at 6). Arguing that "[t]hese facts establish that the telemarketing calls were part of a coordinated campaign designed to generate financing leads for [DFN] and its owners," Plaintiff's Complaint alleges that Defendants' actions violated the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227(b) and (c) (Counts One and Two) as well as the Florida

---

[1] According to the Complaint, Defendant Manesse is the "owner and principal" of DFN while Defendant Murillo is a "member and manager" of DFN. (Doc. 1 at 3–4). Since the time that the Complaint was originally filed by Plaintiff, Defendants Manesse and Murillo have been dismissed from the case without prejudice (see Doc. 33), as per Plaintiff's Notice of Voluntary Dismissal (see Doc. 32).

Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059 (Count Three). (*Id.* at 7, 13–15).

## II. Standard

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a pleading must include "a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. Pro. 8(a)(2)). While the Rule does not explicitly require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Labels, conclusions, and formulaic recitations of the elements of a cause of action are insufficient. *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). So too are mere "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

A complaint must contain sufficient factual matter, which, if accepted as true, would "'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation omitted). All reasonable inferences should be drawn in favor of the plaintiff when construing a complaint. *See Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). However, the Court is not bound to accept as true a legal conclusion in the complaint that has been

stated as a "factual allegation." *Iqbal*, 556 U.S. at 678. Moreover, while "[t]he pleadings of a *pro se* litigant are to be held to less stringent standards than those drafted by an attorney . . . a *pro se* litigant must still meet minimal pleading standards." *Eidson v. Arenas*, 910 F. Supp. 609, 612 (M.D. Fla. 1995).

"A court is obligated to dismiss an action against a defendant over which it has no personal jurisdiction." *Smith v. Trans-Siberian Orchestra*, 689 F. Supp. 2d 1310, 1312 (M.D. Fla. 2010) (citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999)). "In order to determine whether the district court has personal jurisdiction over the nonresident defendant[]" in this case, "we must undertake a two-part analysis." *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). "First we must determine whether the Florida long-arm statute provides a basis for personal jurisdiction. If so," then it must be further determined "whether sufficient minimum contacts exist between the defendants and the forum state so as to satisfy 'traditional notions of fair play and substantial justice' under the Due Process Clause of the Fourteenth Amendment." *Id.* (quoting *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir. 1996)); *see also Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). "On a motion to dismiss for lack of personal jurisdiction," it is the plaintiff who "bears the burden of establishing, by a preponderance of the evidence, that the court has jurisdiction over the defendant." *Smith*, 689 F. Supp. 2d at 1312.

## III. Discussion

Defendant's Motion argues that Plaintiff's Complaint should be dismissed, either in part or in full, for three reasons: (1) because this Court "does not have personal jurisdiction over DFN," (*see* Doc. 21 at 1–11); (2) because Count Three of Plaintiff's Complaint, alleging claims under the FTSA, "fails to state a cause of action," (*see id.* at 11–13); and (3) because "Plaintiff's Complaint is a shotgun pleading," (*see id.* at 13–15). For the reasons articulated below, the undersigned recommends a finding by the Court that it does have personal jurisdiction over Defendant. The undersigned further submits, however, that Plaintiff's Complaint is, in fact, an impermissible shotgun pleading. Therefore, the undersigned recommends that: (1) Defendant's Motion be granted in part; (2) Plaintiff's Complaint be dismissed without prejudice; and (3) Plaintiff be granted leave to file an amended pleading. The undersigned further submits that the Court need not address the FTSA claim in Count Three at this point given that the Complaint should be dismissed in its entirety.

### A. Personal Jurisdiction

Defendant DFN notes in its Motion that the present action "stems from alleged telephone calls made to Plaintiff . . . regarding commercial/business loan opportunities." (Doc. 21 at 1). Defendant argues that, because it "did not initiate these phone calls, and [Plaintiff's] Complaint makes no non-conclusory allegations as to a principal/agent relationship with whoever made those calls" to her, "the Complaint is due to be dismissed for lack of personal jurisdiction over DFN." (*Id.*) The undersigned finds such arguments to be unpersuasive.

"Florida's long-arm statute provides two ways in which a defendant may be subject to the jurisdiction of the state's courts." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (citing *Carmouche*, 789 F.3d at 1203–04). First, a defendant may be subject to "*specific* personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida . . . ." *Carmouche*, 789 F.3d at 1203–04 (citing Fla. Stat. § 48.193(1)(a)) (emphasis in original).[2] Second, "Florida courts may exercise *general* personal jurisdiction—that is, jurisdiction over any claims

---

[2] Florida Statute § 48.193(1)(a) specifies that "[a] person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

2. Committing a tortious act within this state.

3. Owning, using, possessing, or holding a mortgage or other lien on any real property within this state.

4. Contracting to insure a person, property, or risk located within this state at the time of contracting.

5. With respect to a proceeding for alimony, child support, or division of property in connection with an action to dissolve a marriage or with respect to an independent action for support of dependents, maintaining a matrimonial domicile in this state at the time of the commencement of this action or, if the defendant resided in this state preceding the commencement of the action, whether cohabiting during that time or not. This paragraph does not change the residency requirement for filing an action for dissolution of marriage.

6. Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

   a. The defendant was engaged in solicitation or service activities within this state; or

   b. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

7. Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

8. With respect to a proceeding for paternity, engaging in the act of sexual intercourse within this state with respect to which a child may have been conceived.

9. Entering into a contract that complies with s. 685.102."

against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in 'substantial and not isolated activity' in Florida." *Id.* at 1204 (citing Fla. Stat. § 48.193(2)) (emphasis in original).

Plaintiff's Response to Defendant's Motion makes clear that she is "rel[ying] on specific, not general, personal jurisdiction" pursuant to Florida's long-arm statute to establish this Court's personal jurisdiction over Defendant. (Doc. 24 at 3). Plaintiff's Response further articulates that her Complaint "alleges that Plaintiff resides in Orlando, Florida, that the unlawful calls were received here [in Florida], and that DFN transacts business in Florida," as evidenced by "a specific factual sequence" chronicled in the Complaint "connecting the calls [Plaintiff received] to DFN." (*Id.* at 3–4). More specifically, Plaintiff documents that sequence as follows: "callers directed Plaintiff to apply through Funding-Center.com and TheFundingCtr.com; those [webs]ites functioned as the intake mechanism for the telemarketing campaign; Plaintiff submitted a request for more information through that funnel on February 20, 2024;" and "immediately afterward Plaintiff received a phone call from [a person] who identified himself as calling from Direct Funding, followed by loan application and financing documents [being sent to Plaintiff unsolicited] from Direct Funding." (*Id.* at 4).

Defendant contends that Plaintiff's jurisdictional argument that "whoever placed the phone calls to Plaintiff was . . . DFN's agent" is "unavailing given that the Murillo Declaration refutes that there is an agency relationship between any entity that would have placed any calls to Plaintiff and DFN." (Doc. 21 at 7; *see also* Doc. 22 at 2

¶ 10 (Declaration of Dominque Murillo, DFN's Operations Manager, stating that "DFN works with third-party marketers who generate leads, but DFN does not direct or control how those marketers obtain the leads, nor how they obtain the contact information for those leads."). To be sure, any doubts the Court has "as to whether a prima facie case for personal jurisdiction has been made are [to be] construed in favor of the defendant and unrefuted allegations in the defendant's affidavit are presumed to be true." *Nutramax Laboratories, Inc. v. Lintbells Inc.*, No. 8:22-cv-1691-TPB-MRM, 2023 WL 2598663, at *1 (M.D. Fla. 2023) (citing *3Lions Publ'n, Inc. v. Interactive Media Corp.*, 389 F. Supp. 3d 1031, 1036 (M.D. Fla. 2019); *Performance Indus. Mfg., Inc. v. Vortex Performance Pty Ltd.*, No. 8:18-cv-00510-T-02AAS, 2019 WL 78840, at *2 (M.D. Fla. 2019)). As Plaintiff's Response makes clear, however, the representations of Defendant's employee as conveyed in the cited Declaration are anything but unrefuted. (*See* Doc. 24 at 4–5 (noting that the Declaration cited by Defendant in its Motion "does not eliminate the factual allegations in the Complaint or the exhibits attached to it. At minimum, the competing narratives show that the jurisdictional question turns on facts relating to DFN's relation with the lead-generation funnel and the transfer of Plaintiff's information").

While Defendant's Motion representations may very well prove themselves to be true over the course of litigation, they are contradicted by the specific factual assertions described by Plaintiff in her Complaint. (*Cf.* Doc. 1 at 5–7). At this stage of the proceedings and accepting the factual allegations in Plaintiff's Complaint as true, the undersigned is satisfied that Plaintiff has established, by a preponderance of the

evidence, that the Court may exercise specific personal jurisdiction over defendant pursuant to Florida's long-arm statute. *See* Fla. Stat. § 48.193(1)(a) (establishing specific personal jurisdiction in the State of Florida over one "who personally or through an agent" "operat[es], conduct[s], engag[es] in, or carr[ies] on a business or business venture in th[e] state . . . ."); *Smith*, 689 F. Supp. at 1312; *Carmouche*, 789 F.3d at 1203–04. Furthermore, the undersigned is not fully convinced, even taking the assertions in the two-page Murillo Declaration as true, that the marketers who Defendant "works with" are not Defendant's agents. The portion of the affidavit setting forth the relationship between Defendant and its "third-party marketers" is just four sentences in length (Doc. 22 at 2 ¶¶ 10–13), and, in the undersigned's estimation, does not sufficiently rebut Plaintiff's prima facie contention that the marketers are agents of DFN.

Defendant's Motion also argues that, "[e]ven if the Court could find that specific personal jurisdiction would be appropriate under Florida's long arm statute, the Court should nonetheless dismiss the claims against DFN for want of jurisdiction for a failure to comport with principles of due process." (Doc. 21 at 8). The "touchstone" of such a due process analysis "is whether the defendant has 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Waite*, 901 F.3d at 1312 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "The minimum contacts inquiry focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Id.* (quoting *Walden v. Flore*, 571 U.S. 277, 284 (2014)). "This inquiry

ensures that a defendant is haled into court in a forum state based on the defendant's own affiliation with the state, rather than the 'random, fortuitous, or attenuated' contacts it makes by interacting with other persons affiliated with the state." *Id.* (citing *Walden*, 571 U.S. at 284). Once again accepting Plaintiff's factual Complaint allegations as true, the undersigned is satisfied that Plaintiff has established sufficient minimum contacts by Defendant with the State of Florida through its purported telemarketing endeavors as to not offend traditional notions of fair play and substantial justice by this Court's exercise of personal jurisdiction over it. *See Waite*, 901 F.3d at 1312; *Carmouche*, 789 F.3d at 1204. As such, the undersigned respectfully recommends that the Court deny Defendant's Motion in part specifically as pertains to Defendant's challenge to personal jurisdiction.

**B. Shotgun Pleading**

Addressing next Defendant's argument that Plaintiff's Complaint constitutes an impermissible shotgun pleading, the undersigned respectfully recommends that Defendant's Motion be granted insofar as this issue is concerned, and that Plaintiff's Complaint accordingly be dismissed without prejudice. The Court "has an independent obligation to dismiss a shotgun pleading." *Ain Jeem, Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule A.*, No. 8:21-cv-1331, 2021 WL 2941735, at *1 (M.D. Fla. July 13, 2021). "If, in the face of a shotgun complaint, the defendant does not move the district court to require a more definite statement, the court, in the exercise of its inherent power, must intervene *sua sponte* and order a

repleader." *McWhorter v. Miller, Einhouse, Rymer & Boyd, Inc.*, No. 6:08-cv-1978, 2009 WL 92846, at *2 (M.D. Fla. Jan. 14, 2009) (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001)); *see also Arrington v. Green*, 757 F. App'x 796, 797 (11th Cir. 2018) (per curiam) (affirming the district court's *sua sponte* dismissal of a shotgun pleading).

The 11th Circuit has identified four general categories of shotgun pleadings:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type . . . is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. ***Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against***.

*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (emphasis added). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323; *see also Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1018 n.8 (11th Cir. 2001) ("The failure of the plaintiff to identify his claims with sufficient clarity to enable the defendant to frame a [responsive] pleading constitutes shotgun pleading"); *Boatman v. Town of Oakland*, 76 F.3d 341, 343 n.6 (11th Cir. 1986)

(characterizing as a "shotgun pleading" a complaint that failed to place a defendant on notice of what the claim was and the grounds upon which it rested).

Defendant's Motion argues that Plaintiff's Complaint "recites a number of allegations against the various defendants, but when it comes to the actual counts, there is no indication as to whom each count is directed and what factual grounds underpin each claim." (Doc. 21 at 15). Even considering the fact that two of the Defendants named in Plaintiff's Complaint, Kenneth Manesse and Christian Murillo, have since been dismissed from the case without prejudice since the time that Defendant's Motion was originally filed, the undersigned agrees with Defendant that Plaintiff's Complaint amounts to the fourth type of shotgun pleading warned against in *Weiland.* 792 F.3d at 1323. Plaintiff asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* Accordingly, the undersigned respectfully recommends that Plaintiff's Complaint be dismissed without prejudice.

**C. Amendment**

In general, a *pro se* party should be given an opportunity to file an amended complaint that states a claim within this Court's subject matter jurisdiction. *See Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (per curiam). Because it is possible that Plaintiff could file an amended pleading curing the deficiencies in her Complaint identified above, the undersigned respectfully recommends that the Court permit Plaintiff to amend within a timeframe established by the Court.

**D. Claim Brought Under the FTSA**

Because the undersigned already has recommended that Plaintiff's Complaint be dismissed without prejudice as an impermissible shotgun pleading, the undersigned does not reach the arguments in Defendant's Motion pertaining to Plaintiff's FTSA Claim in Count Three of her Complaint.

## IV. Recommendation

Upon consideration of the foregoing, the undersigned **RESPECTFULLY RECOMMENDS** that the Court:

1. **GRANT IN PART**, **DENY IN PART**, and **DENY WITHOUT PREJUDICE IN PART** Defendant's Motion to Dismiss (Doc. 21), and specifically:

   a. **GRANT** Defendant's Motion to Dismiss (Doc. 21) to the extent Defendant argues the Complaint (Doc. 1) is a shotgun pleading;

   b. **DENY** Defendant's Motion to Dismiss (Doc. 21) to the extent Defendant argues the Court lacks personal jurisdiction over Defendant; and

   c. **DENY WITHOUT PREJUDICE** Defendant's Motion to Dismiss (Doc. 21) to the extent Defendant raises additional arguments for dismissal of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6);

2. **DISMISS WITHOUT PREJUDICE** Plaintiff's Complaint (Doc. 1) as a shotgun pleading;

3. **PERMIT** Plaintiff to file an amended complaint, within a timeframe established by the Court; and

4. **ADVISE** Plaintiff that a failure to timely file an amended complaint that cures the deficiencies outlined in this Order by the established date could result in the closure of Plaintiff's case without further notice.

**NOTICE TO PARTIES**

A party has **fourteen days** from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

**DONE** and **ORDERED** in Orlando, Florida on October 9, 2026.

Chauncey A. Bratt
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties